UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| CHARLES O'CAIN, Plaintiff, v. RENTON POLICE DEPARTMENT, et al., Defendants. | ) | Case No. C06-0035-RSL-JPD REPORT AND RECOMMENDATION |

I. INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff Charles O'Cain is an inmate at the Regional Justice Center ("RJC") in Kent, Washington, who is proceeding pro se and in forma pauperis in this 42 U.S.C. §§ 1983 and 1985 civil rights action against King County, police officers Paul F. Guest and Jason Renggli, and RJC Custody Sergeant Thomas Manning. Plaintiff alleges that Sgt. Manning ordered two warrantless searches of his prison cell in violation of the Fourth Amendment. He also claims that officers Guest and Renggli conspired with Sgt. Manning to conduct these allegedly unconstitutional searches. Dkt. No. 6 at 3. Additionally, plaintiff alleges that Sgt. Manning had plaintiff placed in administrative segregation ("ad-seg") and restricted his phone

privileges in violation of the Due Process Clause of the Fourteenth Amendment.[1] Dkt. No. 6. Plaintiff seeks over $10 million in damages and an injunction ordering that he be released from ad-seg. *Id.*

This matter comes before the Court upon defendants' motions for summary judgment. Dkt. Nos. 28, 29. Defendants Renggli and Guest argue that plaintiff cannot establish a violation of his civil rights because he has no Fourth Amendment right to be free from unreasonable searches and seizures in his jail cell. Dkt. No. 28 at 5-6. Additionally, the two officers argue that plaintiff has failed to allege that they personally participated in violating his rights. They also argue that plaintiff has not established the existence of a conspiracy to violate his civil rights. Defendants Sgt. Manning and King County argue that plaintiff has no Fourth Amendment protection against having his cell searched. Dkt. No. 29 at 5-7. They also argue that plaintiff does not have a liberty interest in his security-classification status and, therefore, had no due process rights violated by his transfer to the ad-seg unit. Dkt. No. 29 at 7. All of the individual defendants raise the defense of qualified immunity. Dkt. Nos. 28 at 4-5, 29 at 6-7.

Plaintiff's response, construed liberally, argues that plaintiff had a clearly established Fourth Amendment right to be free from warrantless searches and seizures in his cell, that the defendants knowingly violated this right, and accordingly, the defendants are not protected by qualified immunity. Dkt. No. 37; *see also Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) (noting that the Supreme Court has instructed the federal courts to construe liberally the inartful pleadings of pro se litigants) (internal quotation omitted). He also argues that he has a liberty interest in remaining free from the additional restrictions that accompany being

---

[1]Plaintiff states that the defendants' conduct also violated his Fourteenth Amendment right to equal protection, but does not offer any facts from which the Court can construe such a claim. Therefore, plaintiff's equal protection arguments are not addressed by the Court except tangentially, as they pertain to his § 1985 claims.

housed in ad-seg and, therefore, that he was entitled to the procedural safeguards of due process. Having carefully reviewed the parties' pleadings, supporting materials, and the balance of the record, the Court recommends that plaintiff's claims be dismissed with the exception of his due process claim relating to the specific procedure that appears to prevent him from receiving meaningful review of his status. Because under the specific facts of this case the plaintiff has not had a meaningful opportunity for a hearing on his continued ad-seg status, the Court recommends that summary judgment be entered on behalf of the plaintiff on this claim. Even as to this claim, however, the defendants are entitled to qualified immunity from any monetary damages.

## II. FACTS

On the morning of March 16, 2005, a Des Moines, Washington, woman received a collect phone call originating from the RJC. Dkt. No. 25, Ex. 1, Police Rpt. of Ofc. Paul Guest. The caller claimed he was a King County Sheriff's detective investigating a case involving alleged threats to rape the woman and kidnap her child. *Id.* He told the woman her "case number" was 204031985. *Id.* The caller stated that he needed money to help catch the man suspected of making the threats. *Id.* The victim responded that she had little money but could afford to pay $500.00. *Id.* The caller then instructed the woman to get a cashier's check for $500.00 made out to "Charles O. Kain" and to send it to the RJC.[2] *Id.* The woman was assured that she would get her money back as soon as the suspect was arrested. *Id.* The woman, frightened by the disturbing phone call, mailed the check as the caller had instructed. *Id.* On March 18, 2005, she went to the Des Moines Police Department and reported the incident to Officer Paul Guest. Dkt. No. 25, Decl. of Paul Guest at ¶ 5. Officer Guest compiled a case report and forwarded it along for further investigation. *Id.*

On March 19, 2005, a woman in Renton, Washington, received a similar collect phone

---

[2]According to the caller, "Kain" was an undercover police officer who was working on the case.

call from the RJC. Dkt. No. 26, Ex. 1, Police Rpt. of J. Renggli. This time, the caller identified himself as "Carl" O'Cain and gave the woman his inmate-identification number as 204031985. Dkt. No. 26, Ex. 1. The caller claimed that he had been given the woman's number by a fellow inmate named "Greg Smith," and that Smith had told him that she "was someone he could trust because she did not ask any questions." *Id.* The caller then told the woman that Smith would be able to get $5,000.00 "off Carl's property so you can do what you need to do." *Id.* The woman then ended the conversation and reported the phone call to the Renton Police Department on March 21, 2005. *Id.* Officer Renggli prepared a report based on her statement and followed up on the matter by contacting the RJC to see if they had an inmate by the name or inmate number that the caller had given. *Id.* Officer Renggli was told that the name and number were plaintiff's. *Id.* Officer Renggli forwarded a copy of the police report to the RJC. *Id.*

Sergeant Manning works at the RJC in the Criminal Investigations Unit, which investigates crimes that occur within the King County Jail facilities. Dkt. No. 30, Decl. of Thomas W. Manning III, at ¶ 2. On March 7, 2005, Sgt. Manning was contacted by FBI Special Agent Eric Mueller, who informed him that someone within the RJC had made several calls to a woman posing as an FBI agent, and was able to convince her to provide him with her and her family's personal and financial information, including social-security numbers and credit-card numbers. *Id.* at ¶ 4. The woman later became suspicious and reported the incident to the Renton Police Department. *Id.* Sergeant Manning subsequently learned of the similar calls made to other women through the reports of officers Guest and Renggli. *Id.* at ¶ 5.

On March 22, 2005, Sgt. Manning directed several corrections officers at the RJC to search plaintiff's cell. Dkt. No. 30 at ¶¶ 5, 6. During the search, officers found, and placed into evidence, several pieces of paper containing the names and phone numbers of some of the victims. *Id.* On April 26, 2005, Sgt. Manning ordered another search of plaintiff's cell after a

corrections officer overheard him "talking on the telephone to another victim." Dkt. No. 30 at ¶ 7. Plaintiff was allegedly posing as a police officer. Dkt. No. 29, Ex. 4. Again, officers found, and placed into evidence, papers with names and phone numbers written on them, as well as two pages that had been torn out of a phonebook. *Id.* That same day plaintiff was placed on "phone deadlock" and transferred to the ad-seg unit.[3] Dkt. No. 41, Decl. of Teri Hansen at ¶ 6. On April 28, 2005, a King County Superior Court judge signed an order restricting plaintiff's phone privileges. *Id.* at ¶ 9. Plaintiff subsequently challenged this continued detention in ad-seg in a second proceeding in King County Superior Court. In an order dated April 21, 2006, the superior court judge denied the motion, stating that the court would not "micro-manage jail operations." Dkt No. 42 , Ex. B.

On July 20, 2006, this Court directed supplemental submissions relating to the plaintiff's due process claim. Dkt. No. 39. Based on those submissions, it appears that plaintiff has been confined in ad-seg since April 2005, more than seventeen months. Dkt. Nos. 41 at ¶¶ 6, 4; 42 at 2-3. Defendant King County has indicated that the plaintiff's status is reviewed monthly although plaintiff indicates that this has taken place only since the filing of this suit. King County has also indicated that plaintiff "will not be considered for removal from ad-seg placement until the court determines that phone deadlock is no longer necessary." *Id.* ¶¶ 8, 10. In the monthly administrative review decisions, plaintiff's petition to be removed from ad-seg has been denied for the stated reasons that the plaintiff remains under court-ordered phone deadlock. Dkt. No. 41, Ex. A. Consequently, King County will not review whether continued ad-seg placement is appropriate, because King County contends he is subject to court-ordered phone deadlock, and a King County Superior Court judge will not

---

[3]Administrative segregation is a particular designation for inmates who need to be kept out of the general population. Dkt. No. 29, Ex. A., Decl. of Teri Hansen at ¶ 4. Inmates may be housed in the ad-seg unit for a variety of reasons including protective custody, disciplinary-related segregation, or to satisfy a court order. *Id.* Inmates housed in ad-seg have access to the "day room" for only one hour each day. Otherwise they remain in their cells. *Id.*

review the plaintiff's continued detention in ad-seg to avoid micro-managing the jail.

## III. DISCUSSION

### A. Legal Standards Governing Motions for Summary Judgment

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there exists "no genuine issue as to any material fact" such that "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that is relevant to the outcome of the pending action. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists when the evidence is such that "a reasonable jury . . . [could] return a verdict for the nonmoving party." *Id.* (internal citations omitted).

In response to a properly supported summary judgment motion, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts that demonstrate the existence of a genuine issue of fact for trial and produce evidence sufficient to establish the elements essential to his case. *See* Fed. R. Civ. P. 56(e). A mere scintilla of evidence is insufficient to create a factual dispute. *See Anderson*, 477 U.S. at 252. These rules apply to civil rights complaints brought by pro se plaintiffs, although their pleadings are held to a less stringent standard than formal pleadings drafted by lawyers. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972).

### B. Plaintiff's § 1983 Claims Against Sergeant Manning and King County

In order to state a claim for relief under 42 U.S.C. § 1983, a plaintiff must assert that he suffered a violation of rights protected by the Constitution or created by federal statute, and that the violation was proximately caused by a person acting under color of state or federal law. *See Crumpton v. Gates,* 947 F.2d 1418, 1420 (9th Cir. 1991); *see also WMX Technologies, Inc. v. Miller*, 197 F.3d 367, 372 (9th Cir. 1999) (en banc). Section 1983 liability arises only upon a showing that defendants personally participated in violating plaintiff's civil rights. There is no respondeat superior liability under § 1983. *See*, *e.g.*, *Jones*

*v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Additionally, a public official who performs discretionary functions enjoys qualified immunity in a civil action for damages, provided that his conduct did not violate a clearly established federal statutory or constitutional right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (internal citations omitted).

The crux of plaintiff's complaint is that his Fourth Amendment rights were violated when Sgt. Manning ordered a search of his cell without a warrant. Dkt. No. 6 at 3. However, the Supreme Court has held that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984), *see also Portillo v. U.S. Dist. Court for Dist. of Arizona*, 15 F.3d 819, 823 (9th Cir. 1994). Plaintiff has not offered any reason as to why this rule is not applicable to his situation.[4]

As plaintiff did not have a constitutional right to be free from warrantless-searches in his cell, Sgt. Manning did not violate plaintiff's constitutional rights. Therefore, plaintiff's complaint against Sgt. Manning regarding the alleged Fourth Amendment violations should be dismissed for failure to state a claim upon which relief can be granted. Similarly, plaintiff has not stated a claim against King County. Because the underlying conduct of Sgt. Manning did not entail a constitutional violation, plaintiff's assertion that he was deprived of his constitutional rights pursuant to a policy or custom of the County, necessarily fails. Plaintiff's

---

[4]Plaintiff's motion opposing summary judgment (Dkt. No. 37) cites several cases including *United States v. Cohen*, 796 F.2d 20, 23 (2d Cir. 1986), in support of his contention that he retained some expectation of privacy in his prison cell. *Cohen*, and similar cases from the Ninth Circuit, specifically pertained to pretrial detainees as opposed to convicted inmates. *See*, *e.g.*, *Valdez v. Rosenbaum*, 302 F.3d 1039, 1045 (9th Cir. 2002) (holding that pretrial detainees have due process rights against restrictions that constitute punishment). Plaintiff was a convicted prisoner during the relevant time period, therefore, the case law regarding pretrial detainees is inapposite to his claims. *See Resnick v. Hayes*, 213 F.3d 443, 448 (9th Cir. 2000) (holding that convicted inmate who had not yet been sentenced was not entitled to the same rights as a pretrial detainee).

.

complaint against King County should be dismissed for failure to state a claim.

C. Plaintiff's § 1985 Claim Against Sergeant Manning Officer Renggli and Officer Guest

In addition to the § 1983 claims, plaintiff alleges that Sgt. Manning and officers Guest and Renggli are liable under § 1985 for participating in a conspiracy to effectuate unlawful searches of his cell.[5] Dkt. No. 6 at 6. Section 1985 provides a cause of action where there has been a conspiracy to deny a person or group of people the equal protection and immunities of the law. 42 U.S.C. § 1985. For the reasons stated above, the searches of plaintiff's cell were lawful and plaintiff's § 1985 claims are fatally flawed on that basis alone. It should be noted, however, that in order to state a claim under § 1985, a plaintiff must allege that there was an intent to deprive him of equal protection based on some racial or class-based invidious discrimination.[6] *See Bretz v. Kelman*, 773 F.2d 1026, 1028 (9th Cir. 1985), citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). Because plaintiff does not assert that the defendants were motivated by any invidious discrimination, he has not sufficiently pleaded a § 1985 claim. Plaintiff's § 1985 claims against Sgt. Manning and Officers Renggli and Guest should be dismissed.

---

[5]It is unclear from the complaint as to whether plaintiff is also attempting to raise claims against Officers Renggli and Guest under § 1983. In any case, plaintiff has not asserted that these two defendants personally participated in the allegedly unconstitutional conduct. Therefore, plaintiff has not stated a § 1983 claim against Officers Renggli and Guest.

[6]The racial or class-based invidious-discrimination requirement set forth by the Supreme Court in *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971), does not apply to every clause of § 1985. Plaintiff does not specifically state on which portion of § 1985 he is relying, however, from the nature of his complaint and his use of the term "equal protection" the only provisions that fit are the second clause of § 1985(2) and the first clause of § 1985(3). Both of these clauses require racial or class-based discrimination. *See Bretz*, 773 F.2d at 1028-29.

D. Plaintiff's Due Process Claim Against Sergeant Manning and King County

Plaintiff's final allegation is that Sgt. Manning had him transferred into administrative segregation and placed on phone deadlock in violation of the Fourteenth Amendment Due Process Clause. Dkt. No. 6 at 6. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972). Thus, the threshold inquiry for the Court is whether plaintiff's confinement in ad-seg implicates a protected liberty interest. If a liberty interest is at stake, the Court must then determine what procedures plaintiff was entitled to under the Due Process Clause. *See, e.g.*, *Wilkinson v. Austin*, 545 U.S. 209, 125 S. Ct. 2384, 2393 (2005). Finally, the Court evaluates whether the process plaintiff actually received in this case comported with the minimum requirements needed to satisfy due process.

*1. Plaintiff has a liberty interest in not being kept in ad-seg indefinitely and without any meaningful review of his confinement therein*

The Fourteenth Amendment's Due Process Clause does not trigger the need for procedural protections in every instance involving an individual's deprivation of liberty or property at the hands of the state. *See, e.g.*, *Roth*, 408 U.S. at 569, *Ingraham v. Wright*, 430 U.S. 651, 672 (1977). Rather, only when there is a liberty interest at stake is due process implicated. *Id*. Liberty interests protected by the Fourteenth Amendment may arise from either the Due Process Clause itself or from state law. *Meachum v. Fano*, 427 U.S. 215 (1976).

The Supreme Court has held that prisoners will be found to have a state-created liberty interest protected by the Due Process Clause "only where the [prison's] contemplated restraint 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *See Keenan v. Hall*, 83 F.3d 1083, 1088-89 (9th Cir. 1996), quoting

*Sandin v. Conner*, 515 U.S. 472, 484 (1995). "There is no single standard for determining whether a prison hardship is atypical and significant, and the 'condition or combination of conditions or factors [of the alleged hardship]. . . requires case by case, fact by fact consideration.'" *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003), quoting *Keenan*, 83 F.3d at 1089. However, the Court's opinion in *Sandin* indicated that at least three factors require consideration under the "atypical and significant hardship" inquiry. *Sandin*, 515 U.S. at 486-87. Specifically, those criteria are: (1) whether the challenged condition "mirrored those conditions imposed upon inmates in administrative segregation and protective custody," and thus was comparable to restrictions that are within the prison's discretionary authority; (2) the duration of the condition or confinement, and the degree of restraint imposed; and (3) whether the action will necessarily impact the duration of the prisoner's sentence. *Id.*

Ordinarily, administrative segregation in and of itself does not implicate a protected liberty interest. *See*, *e.g.*, *Sandin*, 515 U.S. at 486, *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000) (holding that the pre-sentencing prisoner had no liberty interest in being free from administrative segregation). However, the ultimate inquiry is whether the confinement imposes atypical and significant hardship. *See*, *e.g.*, *Serrano v. Francis*, 345 F.3d 1071 (9th Cir. 2003) (holding that administrative segregation for disabled inmate in unit not equipped for a disabled person gave rise to a liberty interest); *Ramirez v. Galaza*, 334 F.3d at 861 (directing district court to consider the fact that inmate had been in segregation for two years in determining whether confinement constituted significant and atypical hardship); *Wilkinson*, 545 U.S. 209, 125 S. Ct. 2384 (holding that inmates' confinement in highly-restrictive "supermax" prison implicates a liberty interest).

In this case plaintiff has been confined in administrative segregation for over seventeen months. Additionally, the Court is troubled by defendant King County's apparent intent to keep plaintiff in ad-seg indefinitely by virtue of a process that deprives plaintiff of any

meaningful review. In affidavit testimony submitted by defendant King County, Teri Hansen, Corrections Program Supervisor at the RJC, stated that plaintiff would not be considered for removal from ad-seg until "the court determines that phone deadlock is no longer necessary." Dkt. No. 41, Decl. of Teri Hansen at ¶ 10. Defendant King County submitted six "Administrative Segregation Review" forms that were filled out each month from March 2006 through July 2006. Dkt. No. 41, Ex. A. Each form indicates that plaintiff was to remain in ad-seg. *Id.* Under the section of the form entitled "Reasons," all of the forms state, in nearly identical language: "still under court ordered phone restriction." *Id.* No other reasons are given to justify plaintiff's continued confinement in ad-seg. *Id.* However the court order that is the basis of the purported "court ordered phone restriction" has essentially been superceded by a second King County Superior Court Order, issued on April 21, 2006. Dkt. No. 42, Ex. B. Plaintiff brought a motion to be released from ad-seg, which the court denied and stated that it would "not micromanage jail operations." *Id.* Therefore, the assertion that RJC is bound by a court order to keep plaintiff in ad-seg is misleading in light of the court's subsequent order which indicated that the terms of plaintiff's confinement were under the purview of the jail, not the court. The obvious implication for plaintiff under this strange catch-22 is that his term in ad-seg will continue indefinitely.

Based on the length of time plaintiff has been in ad-seg, the level of restriction inmates experience in ad-seg, and the psychological impact plaintiff alleges he has suffered, coupled with the indefiniteness plaintiff faces with regard to any prospect of being transferred out of ad-seg, the Court is satisfied that plaintiff's continuing confinement in ad-seg poses an atypical and significant hardship on plaintiff in relation to the ordinary incidents of prison life such that a liberty interest is at stake. *See*, *Wilkinson*, 545 U.S. at ---, 125 S. Ct. at 2394-95 (holding that segregated confinement that was indefinite in duration and rendered inmates ineligible for parole consideration created a combination of factors that implicated a liberty interest).

2. *The prison's failure to conduct periodic, meaningful reviews of plaintiff's placement in ad-seg violates the*

*Due Process Clause of the Fourteenth Amendment*

When placing a prisoner in administrative segregation, "[p]rison officials must hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated. The prison officials must inform the prisoner of the charges against the prisoner or their reasons for considering segregation. Prison officials must allow the prisoner to present his views." *Toussaint v. McCarthy*, 801 F.2d 1080, 1100 (9th Cir. 1986) (footnote omitted). The Due Process Clause does not require that the inmate be given detailed written notice of charges, representation by counsel, an opportunity to present witnesses, or a written decision describing the reasons for placing the prisoner in administrative segregation. *Id.* at 1100-01. Administrative segregation may not be used as "a pretext for indefinite commitment of an inmate." *Id.* at 1101 (citing *Hewitt v. Helms*, 459 U.S. 460, 477 n.9 (1983), *methodology abandoned on other grounds in Sandin,* 515 U.S. at 484 n.5). "Prison officials must engage in some sort of periodic review of the confinement of such inmates." *Toussaint*, 801 F.2d at 1101. Due process requires that an individual be given a meaningful opportunity to present his views to the critical decision makers. See *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (holding that "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner") (citations and quotation omitted).

Here, the initial due process plaintiff received upon being transferred to ad-seg was more than adequate. Plaintiff was given written notice that he was being transferred to ad-seg because he was being placed on phone deadlock. He was given a face-to-face interview with an RJC staff member within a day of being transferred and had an opportunity to present his views. Therefore, plaintiff was given at least the minimal amount of due-process protection at that time.

However, since plaintiff has been in administrative segregation, the decision to retain him there has not been reviewed in a meaningful way, at least with regard to the period of time after the second court order was issued. As discussed above, the RJC staff has relied on

a court order placing plaintiff on phone deadlock to keep plaintiff in ad-seg for over seventeen months. But since the subsequent court order indicated that the court was not going to "micromanage" the jail, it is evident that the court will not review plaintiff's placement in ad-seg or his removal from ad-seg. Therefore, if plaintiff's status is to be periodically reviewed as due process requires, it is solely the responsibility of the RJC to conduct such reviews. Defendant King County acknowledges that it already has the necessary procedures in place and that, on its own initiative, the RJC reviews inmates' ad-seg placements every thirty days. But the further and more crucial step that due process requires is that these reviews be more than just "meaningless gestures." *Toussaint*, 801 F.2d at 1102. By relying upon the second superior court order to dispense with the need to consider the plaintiff's application, this hearing becomes simply a "meaningless gesture."

3. *Sergeant Manning is entitled to qualified immunity from plaintiff's suit for monetary damages*

The affirmative defense of qualified immunity shields public officials performing discretionary functions from liability for civil damages under § 1983, "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "A right is clearly established for purposes of qualified immunity if, at the time the right was allegedly violated, its contours were sufficiently clear that a reasonable official would understand that what he is doing violates that right." *May v. Baldwin*, 109 F.3d 557, 561 (9th Cir. 1997) (internal quotation and citation omitted). Moreover, an official protected by qualified immunity will not be held personally liable for an allegedly unlawful official action if his action was objectively, legally reasonable. *See Harlow*, 457 U.S. at 819.

In this case Sgt. Manning is entitled to qualified immunity from plaintiff's claim for damages. First, the violation of plaintiff's due process rights occurred not upon his transfer to ad-seg, which was ordered by Sgt. Manning, but upon the RJC's failure to accord plaintiff

meaningful review of his placement. Plaintiff has not shown that Sgt. Manning personally participated in that process at all. Second, even if Sgt. Manning had personally participated in the reviews it cannot be said that he reasonably would have known that he was violating plaintiff's rights. The Court notes that, although the jail staff's reliance on the court-ordered phone deadlock ultimately produced an absurd result, plaintiff has not offered any evidence that any of the defendants intended to violate his rights. Given the anomalous nature of plaintiff's situation, it is doubtful that the individual or individuals involved in plaintiff's reviews would have understood that they were violating plaintiff's due process rights. In particular, plaintiff has not shown that the RJC staff responsible for reviewing his ad-seg placement even knew about the second court order. Further, none of the actions or inactions alleged arise to the level of being objectively, legally unreasonable. Thus, qualified immunity is appropriate in this case, and plaintiff's claim for damages against Sgt. Manning should be dismissed on that basis.

4. *The plaintiff is entitled to declaratory relief*

Although plaintiff's claims for monetary damages are precluded by qualified immunity he is still entitled to declaratory relief. "Qualified immunity . . . does not bar actions for declaratory or injunctive relief . . .." *Los Angeles Police Protective League v. Gates*, 995 F.2d 1469, 1472 (9th Cir. 1993) (internal quotation and citation omitted). In this case, as noted above, reliance on the second King County Superior Court Order, without more, to decide whether the plaintiff should continue in ad-seg makes any hearing is a meaningless gesture.

By this order, this Court is not directing that the plaintiff be released from ad-seg. Like the Superior Court, this Court is in no position to "micromanage" the RJC. It may be that reasons remain to keep the plaintiff in ad-seg remain. It may be that there are other alternatives short of ad-seg that can address the valid concerns of RJC officials relating to the plaintiff's improper use of the telephones – conduct which occurred seventeen months ago.

This order does direct the RJC officials to provide the plaintiff with a meaningful hearing when the issue of his continued detention ad-seg status is reviewed. This obligation is not satisfied by mere reliance, by itself, of the second King County Superior Court Order.

## IV. CONCLUSION

The motion for summary judgment made by defendants Renggli and Guest should be granted, and plaintiff's complaints against them should be dismissed. With respect to plaintiff's monetary claims against Sgt. Manning, the motion for summary judgment made by defendants Manning and King County should be granted. Plaintiff has established, however, the second King County Superior Court Order in which the Court stated it would not micromanage the RJC, cannot serve as a substitute for a hearing as to whether plaintiff should remain in ad-seg status. To this limited degree, plaintiff's claim for declaratory relief is granted. A proposed order accompanies this Report and Recommendation.

DATED this 20th day of September, 2006.

James P. Donohue

JAMES P. DONOHUE
United States Magistrate Judge